## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PENNMARK COVENTRY HOLDINGS, LLC,** | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **KOHL'S DEPARTMENT STORES, INC.,** | : | |
| *Defendant.* | : | **No. 25-cv-1918** |

### MEMORANDUM

**KENNEY, J.**                                                                              **JUNE 18, 2026**

The Court previously granted in part Defendant's Motion to Strike without waiting on an opposing response from Plaintiff because it was evident that Plaintiff's attempt to parachute in new theories of recovery at the close of fact discovery was improper under the Federal Rules of Civil Procedure and reflected an end-run around the Court's scheduling orders. Out of consideration for counsel, the Court also endeavored to provide the parties with a decision before resources were unnecessarily expended on motions for summary judgment that would then need to be redrafted or further postponed. Plaintiff's Motion for Reconsideration (the "Plaintiff's Motion") only reinforces the impropriety of its belated disclosure and pursuit of liability and damages theories that were never pleaded. However, rather than consider Plaintiff's Motion as a Motion for Reconsideration, the Court will review Defendant's original Motion to Strike, and construe Plaintiff's Motion for Reconsideration as a Response to the Motion to Strike. In making its original decision on the Motion to Strike, the Court considered the *Pennypack* factors without writing on them due to the abundantly clear conclusion that they compelled. To the extent the Court did not expressly set forth an analysis of the *Pennypack* factors for the benefit of the parties, the Court will write on them now.

## I.    **DISCUSSION**

The Court assumes the parties' familiarity with the facts and procedural history of the case. When deciding whether to strike or exclude evidence under Rule 37 as a sanction for a discovery violation, courts in the Third Circuit consider the following factors: "(1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with a court order or discovery obligation." *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000) (citation omitted); *see also Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904–05 (3d Cir. 1977), *overruled on other grounds by Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985). In addition, district courts are instructed to consider "the importance of the evidence to the proffering party." *Hill v. TD Bank, NA*, 586 F. App'x 874, 879 (3d Cir. 2014); *see also Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (same).

At least three out of five *Pennypack* factors weigh strongly in favor of exclusion of Plaintiff's (1) new breach-of-lease theory (the "mall doors" theory); and (2) associated diminution in value, "de-malling," appraisal-based mall-wide valuation impacts, or any similar valuation-based damages theory. *See Aetna Inc. v. Mednax, Inc.*, No. 18-cv-2217, 2021 WL 949454, at \*7 (E.D. Pa. Mar. 12, 2021) ("Rule 37 permits as a discovery sanction the exclusion of a legal theory, at least in conjunction with or as an effect of the exclusion of evidence supporting the theory." (collecting cases)). Although two factors lean towards neutral, an overall balance of the *Pennypack* factors weighs in favor of exclusion, especially in light of Plaintiff's failure to substantially justify its delay in asserting materially different theories at this point in the proceedings. *See Kimmel v.*

*Mass. Bay Ins. Co.*, No. 21-cv-12743, 2023 WL 8714336, at *7 (D.N.J. Dec. 15, 2023) (finding that striking evidence was warranted even though two of the *Pennypack* factors "weigh[ed] slightly against striking").

First, Plaintiff's decision to serve supplemental written discovery responses identifying its new theories for recovery *on the day that fact discovery closed* was prejudicial to Defendant. All fact discovery was originally scheduled to be completed by January 27, 2026. *See* ECF No. 27. But after the parties jointly moved to extend that deadline, *see* ECF Nos. 40, 42, the Court gave the parties until March 16, 2026 to complete fact discovery. *See* ECF No. 45. Plaintiff does not articulate anywhere in its Motion why it was substantially justified in failing to supplement its responses earlier than March 16, or in failing to move for leave to amend the Second Amended Complaint to advance its new theories. *See* ECF No. 55 at 16 (admitting that it only disclosed its mall doors theory on March 16). Instead, Plaintiff doubles down on its erroneous contention that its mall doors and associated diminution in value theories were "embedded in this litigation from its inception" and were "expressly pleaded." ECF No. 53-1 at 6–7. Plaintiff's argument is belied by the underlying record. For example, as of January 29, 2026—two days after fact discovery was supposed to have been completed—Plaintiff represented that it did "not presently intend to retain an affirmative expert[,]" *see* ECF No. 42 at 2, which suggests that a diminution in value theory was nowhere in sight at that time.

Importantly, "[t]he Federal Rules of Civil Procedure seek to prevent trial by surprise." *TreCom Sys. Grp. Inc. v. MJ Freeway, LLC*, No. 21-cv-1575, 2024 WL 4595575, at *1 (E.D. Pa. Oct. 25, 2024). Yet Plaintiff's decision to inject new theories into the case at the close of fact discovery undoubtedly came as a surprise to Defendant. In its supplemental responses to Defendant's interrogatories, Plaintiff added a diminution in value theory that seeks an additional

3

$4 million in damages from Defendant. *See* ECF No. 51-7 at 3. Prior to supplementation, Plaintiff's damages consisted of unpaid monthly base rent, unpaid tax charges, and unpaid common area maintenance charges that were estimated to total around $745,609.41. *See* ECF No. 51-3 at 7–8. In addition, Plaintiff represented that it was seeking an unspecified amount of damages for other costs, such as HVAC maintenance, utility, insurance, and repair costs, lost value from inventory that was liquidated, interest, attorney's fees, and consequential damages. *Id.* at 8. Plaintiff's new theory thus significantly expanded the amount at issue in the litigation, in addition to the evidence that may be required to support and/or rebut that theory. *See* ECF No. 51-12 at 15 (arguing that Plaintiff now "seek[s] damages that are nearly seven times higher than the damages sought from the inception of the case, by and through the last day of fact discovery" (emphasis omitted)).

Plaintiff argues that it sufficiently placed Defendant on notice of its new theories based on one paragraph in the 75-paragraph Second Amended Complaint. *See* ECF No. 53-1 at 12 (citing ECF No. 10 ¶ 37). That argument is unavailing. In full, paragraph 37 states: "Plaintiff anticipates that Defendant has committed and will commit in the future events of default which are not fully compensable in money damages which impact the good will of the mall and the shopper experience; accordingly, Plaintiff requests such equitable relief as may be necessary to compel Defendant to perform its lease obligations as may be required." ECF No. 10 ¶ 37. A review of that allegation quickly reveals that it is vague, contains zero facts in support of Plaintiff's mall doors and diminution in value theories, and does not place Defendant on notice that Plaintiff would be affirmatively pursuing another breach claim based on Defendant's purported closure of interior doors during certain months in 2020 and 2021. *See* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader

4

is entitled to relief[.]"). And it is telling that Plaintiff could not cite to *any* other paragraphs in its Second Amended Complaint that supposedly ground its new theories.

Indeed, if the Court were to accept Plaintiff's argument, any plaintiff could plead a breach of contract claim based on one set of facts, separately plead breach in more generalized terms without specifying facts, later raise a new basis for liability against a defendant, and claim that the defendant should have already been attuned to it. *See REACT Env't Pro. Servs. Grp., Inc. v. Buzan*, No. 20-cv-00533, 2021 WL 3604079, at *11 (E.D. Pa. Aug. 13, 2021) (explaining that if the court were to accept a plaintiff's belated disclosure of new damages, "then a plaintiff could merely plead disgorgement, fail to specify any facts or a methodology that substantiate those damages, and then, on the eve of trial, claim that its conduct is harmless"). The Court declines to accept Plaintiff's invitation.

In addition, in support of its argument that its mall doors theory was already being litigated, Plaintiff points the Court to Defendant's October 17, 2024 Notice of Default, Defendant's Counterclaims, and Defendant's 30(b)(6) deposition notice. *See* ECF No. 53-1 at 6–7, 14–17, 18–19. At most, these documents demonstrate that *Defendant* was pursuing its own claims for breach of contract related to the closure of interior mall doors. But that does not lead to the conclusion that Defendant was placed on notice that Plaintiff would be pursuing materially different theories than what it had pleaded in its Second Amended Complaint and what it had disclosed towards the beginning of discovery regarding damages. *Cf. Walsh v. E. Penn Mfg. Co.*, 656 F. Supp. 3d 533, 540 (E.D. Pa. 2023) ("[Defendant] was under no obligation to plead a defense to a claim that was never apparent based on the [plaintiff's] Complaint, his conduct during discovery, or his motions for summary judgment.").

Furthermore, the fact that Defendant retained a rebuttal expert and did not move for relief prior to June 5, 2026 is not fatal to Defendant's claim of prejudice and surprise. To the contrary, it demonstrates an attempt by Defendant "to mitigate that prejudice" as it evaluated Plaintiff's new theories, *see* ECF No. 54 at 9; Defendant was otherwise robbed of the time to do so during fact discovery due to Plaintiff's conduct. Moreover, as Defendant previously noted, Plaintiff served its supplemental responses four days after it had dumped a "production of 871.3 gigabytes of non-bates-stamped, unorganized ESI, making it impossible for [Defendant] to determine [the] full scope of what documents Plaintiff" intended to use to support its new theories. ECF No. 51-12 at 22; *see also id.* at 7. Accordingly, the prejudice to Defendant from Plaintiff's conduct is more than apparent and weighs heavily in favor of exclusion.

Second, Defendant did not have a simple way to cure the prejudice introduced by Plaintiff's supplemental discovery responses, given Plaintiff's decision to spring its theories on Defendant on the last day of fact discovery (and only a handful of months before trial). The timing of Plaintiff's disclosure prevented Defendant from seeking further discovery, weighing whether additional depositions were needed, and developing a thorough "factual record to defend itself" from theories premised on breaches that supposedly occurred in 2020 and 2021 and contributed towards a diminution in value of the mall. *Aetna Inc.*, 2021 WL 949454, at *6. As Defendant explained, Plaintiff's new theories "would require entirely new discovery on store operations, interior-door access and hours, other mall entrances and tenant access, COVID-era operational decisions, site investigation, and appraising the property," among other topics. *See* ECF No. 51-12 at 21; *see also TreCom Sys. Grp. Inc.*, 2024 WL 4595575, at *2 ("[T]he cure is not as simple as sitting down for a deposition, and the cure can't happen in the waning days before trial."). Therefore, the second factor weighs towards exclusion as well.

Third, permitting Plaintiff to significantly expand the issues beyond what was pleaded and to proceed on new liability and damages theories "would disrupt the orderly and efficient trial of" this case. *Nicholas*, 227 F.3d at 148. The Court already extended the parties' deadline to file motions for summary judgment twice and, in turn, adjusted other case deadlines, including the parties' trial date. *See* ECF Nos. 45, 50. Moreover, "[n]ow is not the time to re-open discovery" when dispositive motions are due to be filed in a few days. *TreCom Sys. Grp. Inc.*, 2024 WL 4595575, at *2. However, proceeding as scheduled to motions for summary judgment and allowing Plaintiff to present evidence and arguments on theories that were not disclosed until the eleventh hour would only result in further prejudice to Defendant. Therefore, this factor, too, weighs in favor of exclusion.

Fourth, the Court hesitates to find outright that Plaintiff's counsels' conduct rises to the level of bad faith or willfulness. But the sequence of events strongly suggests that Plaintiff was attempting to surreptitiously expand the scope of litigation past the November 28, 2025 deadline to amend the pleadings and without leave of Court. Here, Plaintiff provided no reasonable explanation as to why it did not move for leave to amend its Second Amended Complaint or, at a minimum, disclose a theory seeking $4 million in damages earlier than the last day of fact discovery. "At worst," this suggests bad faith; "at best," it appears to have been "a wilful strategic decision" or flagrant dilatoriness and disregard for the Court's scheduling orders and the Federal Rules of Civil Procedure, which have as their aim the fair and efficient resolution of controversies. *Mercedes Benz USA LLC v. Coast Auto. Grp. Ltd.*, No. 99-cv-3121, 2008 WL 4378294, at *4 (D.N.J. Sept. 23, 2008); *see also* Fed. R. Civ. P. 1 (explaining that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action").

Ultimately, "[e]ven if there is no evidence of bad faith, where an oversight is not rationally explained and is surely prejudicial, exclusion is appropriate." *Aetna Inc.*, 2021 WL 949454, at *4 (internal quotations and citation omitted). Plaintiff claims that its new theories are the product of careful "ESI review[,]" ECF No. 53-1 at 28, but the appraisal report that Plaintiff appears to be relying on for its total diminution in value amount of $14.54 million is dated August 24, 2023. *See* ECF No. 51-10 at 3, 9; *see also* ECF No. 51-9 at 3 (appraisal report dated April 26, 2019). Relevant information regarding its new damages theory has been in Plaintiff's own possession for several years. In light of Plaintiff's failure to explain its oversight in introducing these theories into the case earlier, exclusion is warranted. *See TreCom Sys. Grp. Inc.*, 2024 WL 4595575, at *1, 3 (excluding evidence even where there was no bad faith and explaining that "late evidence disrupts the case and can create an unfair advantage"); *see also Aetna Inc.*, 2021 WL 949454, at *6 (finding exclusion was the appropriate sanction where "[t]he record suggest[ed] that [plaintiff] failed to comply with its discovery obligations in bad faith").

Fifth, the importance of the new theories and evidence "does not weigh clearly against or in favor of exclusion" here and is therefore neutral. *Id.* As explained above, Plaintiff has had access to information relevant to its diminution in value theory for years, but did not raise it until the close of fact discovery. Moreover, excluding the new theories does not inherently prevent Plaintiff from recovering anything at all in connection with its breach of contract claim. *See* ECF No. 51-3 at 7–8 (requesting eleven other categories of damages). As in *Aetna*, Plaintiff "will still be able to seek recovery of the damages at the heart of this case:" breach of contract damages from Defendant's purported closure of its store, failure to pay rent, removal of inventory, and contractual default. 2021 WL 949454, at *6. Here, excluding Plaintiff's unpled theories "merely binds [Plaintiff] to its own long-espoused theory of its case" as the master of its Complaint. *Id.* In other

8

words, the Court cannot conclude that these new theories and related evidence are critical to Plaintiff's case. *See Kimmel*, 2023 WL 8714336, at \*11 ("[T]he importance of the evidence alone is insufficient to overcome Rule 26." (internal quotations and citation omitted)); *Sikkelee v. Precision Airmotive Corp.*, 522 F. Supp. 3d 120, 165 (M.D. Pa. 2021) (excluding testimony, even though it "may be important," because that factor was "insufficient to outweigh the other relevant *Pennypack* factors that militate against admission").

In addition, the parties dispute a merits-related issue—that is, whether leave to amend would have been denied as futile on the basis that (1) a claim premised on Defendant's purported breaches of the lease in 2020 and 2021 would be barred by the statute of limitations; and (2) there were no provisions in the lease that obligated Defendant to keep its interior doors accessible. *See* ECF No. 51-12 at 17, 22–23; ECF No. 53-1 at 26–27; ECF No. 54 at 3–5, 7 n.2, 11 n.4; ECF No. 55 at 6, 9–11, 13–15. Without the benefit of fuller, focused briefing on these issues and in the absence of a motion for leave to amend, the Court does not decide them at this time. The Court comments only that if Plaintiff's new theory of breach were, in fact, time-barred, or if Defendant had no obligation of its own to keep its interior doors open, Plaintiff's new breach theory would have little importance to the case. And presumably, that theory may have also been tested at the motion-to-dismiss stage if Plaintiff had properly alleged it in the Second Amended Complaint.

In sum, a balance of the *Pennypack* factors weighs towards exclusion of Plaintiff's new theories, so the Court will preclude Plaintiff from asserting, pursuing, or introducing evidence or argument regarding its new mall doors and diminution in value theories. Accordingly, Plaintiff's Motion requesting reconsideration is denied.

## II.    <u>CONCLUSION</u>

For the foregoing reasons, the Court will deny Plaintiff's Motion (ECF No. 53).  An appropriate Order will follow.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**